**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: craig@nicholaslaw.org
Email: alex@nicholaslaw.org

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 3330
Tel: (954) 400-4713
Email: mhiraldo@hiraldolaw.com

**KIRKLAND LAW LLC**
Jonathan M. Kirkland, Esq.
(*pro hac vice* to be filed)
One Galleria Blvd Suite 1900,
Metairie, Louisiana 70001
Tel: (504) 370-9077
Email: jmk@kirkland.lw.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZRIN MASSARO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEYOND MEAT, INC., and PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,<br><br>Defendants. | CASE NO.: **'20CV0510 AJB MSB**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND INJUNCTIVE RELIEF** |

Plaintiff Nazrin Massaro brings this action on behalf of herself and all others similarly situated against Defendants Beyond Meat, Inc., ("Beyond Meat"), and People for the Ethical Treatment of Animals, Inc., ("PETA"). Plaintiff alleges, on information and belief, except for information based on personal knowledge, as follows:

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendants' violations of the TCPA

2.      Defendant Beyond Meat is a publicly traded company that develops and sells alternative animal food products made from protein isolate, rice and bean proteins, and various plant extracts.

3.      Defendant PETA is a non-profit animal rights organization.

4.      To promote Defendant Beyond Meat's products, Defendants engage in unsolicited text message advertising with no regard for consumers' privacy rights.

5.      Upon information and belief, Defendants caused thousands of text messages to be placed to the cellular telephones of Plaintiff and Class Members, causing them injuries.

6.      Through this action, Plaintiff seeks injunctive relief to halt Defendants' unlawful conduct. Plaintiff also seeks statutory damages on behalf of herself and the Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

**PARTIES**

7.      Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of San Diego County, California, and the subscriber and/or sole user of the cellular telephone number (858) ***-9991 (the "9991 Number").

8.      Defendant Beyond Meat is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 119 Standard Street, El Segundo, CA 90245.

9.      Defendant PETA is a non-profit corporation organized and existing under the laws of the State of Virginia with its principal place of business at 501 Front Street, Norfolk, VA 23510.

## **JURISDICTION AND VENUE**

10.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

11.    This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

12.    Defendant Beyond Meat is subject to general personal jurisdiction in California because Defendant's principal place of business is in California.

13.    Defendants are subject to specific personal jurisdiction in California because this suit arises out of and relates to Defendants significant contacts with this State.  Defendants initiated and directed, or caused to be initiated and directed, telemarketing and/or advertisement text messages into California in violation of the TCPA.

14.    Specifically, Defendants initiated and directed, or caused to be initiated and directed, the transmission of unsolicited advertisement or telemarketing text messages to the 9991 Number to sell products in California. The 9991 Number has an area code that specifically coincides with locations in California, and Plaintiff received such messages on the 9991 Number while residing in and physically present in California.

15.    Plaintiff's claims for violation of the TCPA against Defendants, and the resulting injuries caused to Plaintiff by Defendants' advertisement and telemarketing messages, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendants' direction of those messages into California.

16.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendants' actions and omissions which gave rise to the claims asserted in this action occurred, in part, in this District.

## **THE TCPA**

17.    The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or

prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

18.     The TCPA further prohibits: (1) any person from initiating a call to any residential telephone line; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(B).

19.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

20.     The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

21.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

22.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

23.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

24.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

25.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

26.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

27.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12));  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

28.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients

1 are encouraged to purchase, rent, or invest in property, goods, or services during the
2 call *or in the future*. *Id*.

3      29.    In other words, offers "that are part of an overall marketing campaign to
4 sell property, goods, or services constitute" telemarketing under the TCPA. *See In*
5 *re Rules and Regulations Implementing the Telephone Consumer Protection Act of*
6 *1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

7      30.    If a call is not deemed telemarketing, a defendant must nevertheless
8 demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter*
9 *of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC
10 Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and
11 non-advertising calls").

12      31.    Further, the FCC has issued rulings and clarified that consumers are
13 entitled to the same consent-based protections for text messages as they are for calls
14 to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952
15 (9th Cir. 2009) ("The FCC has determined that a text message falls within the
16 meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

**FACTS**

18      32.    On or about January 17, 2020, Defendant PETA sent the following
19 marketing text messages to Plaintiff's cellular telephone number ending in 9991
20 ("9991 Number"):



Fri, Jan 17, 10:31 AM

DYK Beyond Meat is available at all On The Border locations? Yum! Be sure to order it at your local restaurant. <3 Melissa from PETA

DYK Beyond Meat is available at all On The Border locations? Yum! Be sure to order it at your local restaurant. <3 Melissa from PETA

33. Upon information and belief, the subject text messages were sent by PETA at the direction and/or under the control of Defendant Beyond Meat.

34. The subject text messages were sent for the benefit of Defendant Beyond Meat.

35. Upon information and belief, prior to transmitting the subject text messages, Defendant PETA consulted with Defendant Beyond Meat as to the content of the messages, and always received final approval to transmit the text messages from Defendant Beyond Meat.

36. Upon information and belief, while Defendant PETA was responsible for ultimately transmitting the text messages, Defendant Beyond Meat always retained the right to change or add something to the content of the messages.

37. Upon information and belief, at all times relevant, Defendant Beyond Meat had the right to control Defendant PETA's telemarketing activities, which right it exercised.

38. Upon information and belief, at all times relevant, Defendant Beyond Meat authorized Defendant PETA to promote its products in the subject unsolicited text messages.

39. Upon information and belief, Defendant Beyond Meat was, at all times relevant, aware of Defendant PETA marketing activities and violations of the TCPA.

40. Upon information and belief, Defendant PETA's acts complained of herein were known, consented to, and/or ratified by Defendant Beyond Meat. Further, Defendant Beyond Meat knowingly received and retained monetary benefit from Defendant PETA's unlawful telemarketing practices alleged herein.

41. Plaintiff is the subscriber and/or sole used of the 9991 number.

42. The text messages received by Plaintiff originated from a telephone number which is owned and/or operated by or on behalf of Defendants.

43. The purpose of Defendants' text messages was to market Defendant Beyond Meats's goods, as is plainly evident from the content of the messages.

44.     Upon information and belief, Defendants caused similar calls to be placed to individuals residing within this judicial district and nationally.

45.     At no point in time did Plaintiff provide Defendants with express written consent to be contacted by Defendants with automated text messages.

46.     While Defendant PETA, as a non-profit organization, would typically not be subject to the FCC's express written consent rule, it is in this case because it was acting as a conduit for Defendant Beyond Meat, a for profit corporation, and because it was engaged in marketing.

47.     The generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages.

48.     The number used by or on behalf of Defendants (738-22) to transmit the above text messages to Plaintiff is known as a "short-code."  Short-codes are short digit sequences, significantly shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

49.     Short codes cannot be used to transmit text messages from a traditional telephone.  Only computer systems can transmit text messages using a short-code.

50.     To send the text message, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

51.     Upon information and belief, the Platform has the capacity to store telephone numbers.

52.     Upon information and belief, the Platform has the capacity to generate sequential numbers.

53.     Upon information and belief, the Platform has the capacity to dial numbers in sequential order.

54.     Upon information and belief, the Platform has the capacity to dial numbers from a list of numbers.

55.     Upon information and belief, the Platform has the capacity to dial numbers without human intervention.

56.     Upon information and belief, the Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

57.     Upon information and belief, transmit the messages at issue, the Platform automatically executed the following steps:

       i.  The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

      ii.  The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

    iii.  Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

    iv.  Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

58.     The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, upon information and belief, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

CLASS ACTION COMPLAINT

59.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



60.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants' text messages also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

61.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

62.     Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, promoting Defendant Beyond Meat's goods, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.**

63.      Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

64.     Upon information and belief, Defendants have placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

65.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

66.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Defendants made non-emergency calls to Plaintiff and the class members' cellular telephones using an ATDS;
>
> (2) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendants' conduct was knowing and willful;
>
> (4) Whether Defendants are liable for damages, and the amount of such damages; and
>
> (5) Whether Defendants should be enjoined from such conduct in the future.

67.     The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendants routinely transmit text messages to telephone numbers assigned to cellular telephone services are accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

1

**TYPICALITY**

2

68.     Plaintiff's claims are typical of the claims of the Class members, as

3

they are all based on the same factual and legal theories.

4

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

5

69.     Plaintiff is a representative who will fully and adequately assert and

6

protect the interests of the Class and has retained competent counsel. Accordingly,

7

Plaintiff is an adequate representative and will fairly and adequately protect the

8

interests of the Class.

9

**SUPERIORITY**

10

70.     A class action is superior to all other available methods for the fair and

11

efficient adjudication of this lawsuit, because individual litigation of the claims of all

12

members of the Class is economically unfeasible and procedurally impracticable.

13

While the aggregate damages sustained by the Class are in the millions of dollars, the

14

individual damages incurred by each member of the Class resulting from Defendant's

15

wrongful conduct are too small to warrant the expense of individual lawsuits. The

16

likelihood of individual Class members prosecuting their own separate claims is

17

remote, and, even if every member of the Class could afford individual litigation, the

18

court system would be unduly burdened by individual litigation of such cases.

19

71.     The prosecution of separate actions by members of the Class would

20

create a risk of establishing inconsistent rulings and/or incompatible standards of

21

conduct for Defendant.  For example, one court might enjoin Defendant from

22

performing the challenged acts, whereas another may not.  Additionally, individual

23

actions may be dispositive of the interests of the Class, although certain class

24

members are not parties to such actions.

25

26

**COUNT NO. 1**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

27

72.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 71

28

of this Complaint and incorporates them by reference herein.

73.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

74.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

75.     Defendants – or third parties directed by Defendants – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

76.     These calls were made without regard to whether Defendants had first obtained express written consent from the called party to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

77.     Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

78.     As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Nazrin Massaro, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual and statutory damages, where appropriate;

3.    Punitive or treble damages according to statute or where otherwise appropriate;

4.    An injunction requiring Defendants to cease all wireless spam activities;

5.    An award of reasonable attorneys' fees and costs; and

6.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff hereby requests trial by jury of all claims that can be so tried.

Respectfully submitted:

DATED:  March 18, 2020               **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Craig M. Nicholas*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Tel: (954) 400-4713
Email: mhiraldo@hiraldolaw.com

**KIRKLAND LAW LLC**
Jonathan M. Kirkland, Esq.
(*pro hac vice* to be filed)
One Galleria Blvd Suite 1900,
Metairie, Louisiana 70001
Tel: (504) 370-9077
Email: jmk@kirkland.lw.com

*Attorneys for Plaintiff*