UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRUJILLO,<br><br>Plaintiff,<br><br>v.<br><br>FREE ENERGY SAVINGS COMPANY, LLC, d/b/a QUALITY CONSERVATION SERVICES,<br><br>Defendant. | Case No. 5:19-cv-02072-MCS-SP<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [57]** |

Defendant Free Energy Savings Company, LLC, doing business as Quality Conservation Services, moves for judgment on the pleadings on Plaintiff Michael Trujillo's automatic telephone dialing system ("ATDS") claim. (Mot., ECF No. 57.) The Court heard oral argument on December 7, 2020. For the following reasons, the motion is denied.

**I.   BACKGROUND**

This is a putative class action for violations of the Telephone Consumer Protection Act ("TCPA"). (*See generally* Compl., ECF No. 1.) Plaintiff alleges Defendant used an ATDS using a random or sequential number generator to send two unsolicited text messages to Plaintiff in August 2019. (Compl. ¶¶ 17, 22–24.)

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." *San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011) (alteration in original) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004)).[1]

Federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The Constitution limits Article III federal courts' jurisdiction to deciding 'cases' and 'controversies.'" *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (quoting U.S. Const. art. III, § 2). The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the

---

[1] Although Defendant presents the motion as a subject-matter jurisdiction challenge, the Court doubts that the Rule 12(b)(1) framework is appropriate to apply here. Plaintiff seeks to certify a class of recipients of text messages sent both before and after the time during which the ATDS statute arguably was unenforceable. (Compl. ¶ 28 (seeking to certify class of persons who received text messages "from four years prior to the filing of this action through the date notice is sent to the Class").) The Court appears to possess subject-matter jurisdiction over the action even if Plaintiff's individual claim is not viable. *See Shen v. Tricolor Cal. Auto Grp.*, No. CV 20-7419 PA (AGRx), 2020 U.S. Dist. LEXIS 237582, at *6–7 (C.D. Cal. Dec. 17, 2020). The Court need not resolve whether the appropriate Rule 12(b) analog is Rule 12(b)(1) or Rule 12(b)(6) because the Court's reasoning and disposition hold under both frameworks.

judiciary." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The burden of establishing subject-matter jurisdiction lies with the party asserting jurisdiction, and courts presume a lack of jurisdiction until the party proves otherwise. *See Kokkonen*, 511 U.S. at 377; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

## III. DISCUSSION

Defendant contends that the Court cannot adjudicate the ATDS claim because the claim is premised on a statute that was unconstitutional and ineffective at the time the text messages at issue in this action were sent. (Mot. 5–10.) Plaintiff argues that the statute was effective, at least against Defendant and other non-government-debt collectors, during the relevant period. (Opp'n 5–12, ECF No. 60.)

Congress enacted the TCPA in 1991; "[i]n plain English, the TCPA prohibit[s] almost all robocalls to cell phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) (hereinafter *AAPC*). In November 2015, Congress amended the TCPA to add an exception for robocalls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (amending 47 U.S.C. § 227(b)(1)(A)(iii)).

In *AAPC*, the Supreme Court examined the constitutionality of the TCPA as amended. In a fractured decision, six Justices concluded that the government-debt exception introduced in the 2015 amendment violated the First Amendment, and seven Justices determined that the 2015 amendment should be severed from the remainder of the statute. *AAPC*, 140 S. Ct. at 2343–44. *AAPC* left unanswered whether and to what extent robocallers may be liable for calls made while the unconstitutional government-debt exception was affixed to the face of the statute, between enactment in 2015 and severance in 2020.

Few courts have opined on the issue. In this district, Judge Anderson denied a motion to dismiss raising a similar argument, reasoning that Justice Kavanaugh's plurality opinion in *AAPC* and the Ninth Circuit's decision in *Duguid v. Facebook, Inc.*,

926 F.3d 1146 (9th Cir. 2019),[2] "ascribe to a more limited view of severance." *Shen v. Tricolor Cal. Auto Grp.*, No. CV 20-7419 PA (AGRx), 2020 U.S. Dist. LEXIS 237582, at *9–13 (C.D. Cal. Dec. 17, 2020). Several other district courts in this circuit have assumed that the constitutionally inoffensive portion of the statute remains enforceable as to calls made between 2015 and 2020. *See, e.g.*, *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 U.S. Dist. LEXIS 161629, at *5 (D. Ariz. Sept. 3, 2020) ("Although *Barr* struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on."); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953, at *5 (N.D. Cal. Aug. 11, 2020) ("[T]he [Supreme] Court severed the government-debt exception from the remainder of the statute, leaving the call restriction otherwise intact. Because the government-debt exception is not at issue in this case, the decision in *Political Consultants* does not impact Plaintiffs' claims."). One out-of-circuit district court, citing other courts' assumption that the statute remains enforceable, concluded that the court had jurisdiction over such claims. *Abramson v. Fed. Ins. Co.*, No. 8:10-cv-2523-T-60AAS, 2020 U.S. Dist. LEXIS 232937, at *3–4 (M.D. Fla. Dec. 11, 2020) (collecting cases).

On the other side of the ledger, three out-of-circuit district courts have concluded that the federal courts lack jurisdiction over claims concerning robocalls made during the period of constitutional infirmity. *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577, at *8 (M.D. Fla. Dec. 11, 2020); *Lindenbaum v. Realgy, LLC*, __ F. Supp. 3d __, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572, at *20 (N.D. Ohio Oct. 29, 2020), *appeal filed*, No. 20-4252 (6th Cir. Nov. 30, 2020); *Creasy v. Charter Commc'ns, Inc.*, __ F. Supp. 3d __, No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *14–15 (E.D. La. Sept. 28, 2020).

---

[2] *Duguid* is now pending before the Supreme Court to address a separate issue. *Facebook, Inc. v. Duguid*, 207 L. Ed. 2d 1118 (2020) (granting petition for writ of certiorari). As acknowledged in a prior Order, the Ninth Circuit's decision is binding. (Order 3, ECF No. 54.)

4

Central to the parties' arguments here is a footnote in Justice Kavanaugh's *AAPC* plurality opinion:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*AAPC*, 140 S. Ct. at 2355 n.12 (citation omitted). The footnote presents a paradox. It indicates that government-debt collectors should not be held liable for making robocalls between 2015 and 2020, suggesting that either the government-debt exception was effective during that period or the statute in its entirety was ineffective during that period. At the same time, the plurality states that *AAPC* "does not negate" general robocaller liability, suggesting that the statute generally was effective during that period, irrespective of whether it was effective as to government-debt robocallers. The footnote leaves unexplained how these outcomes may coexist. *See AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., concurring in part and dissenting in part) ("[A] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."). Nonetheless, *AAPC* "did not address whether severance of the government-debt exception applies retroactively to cases currently pending," and the plurality's footnote does not provide binding guidance on the issue. *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12; *accord Shen*, 2020 U.S. Dist. LEXIS 237582, at *10.

Plaintiff contends that Congress's 2015 amendment of the robocall statute was void *ab initio* and, therefore, was ineffective in changing the pre-2015 text of the statute. (Opp'n 6–9.) The Court finds this approach to severance persuasive. "[A]n unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526–27 (1929)). In *Frost*, the Supreme Court examined a state law requiring a showing of public necessity in order to obtain a cotton gin license. 278 U.S. at 517. The statute later was amended to exempt certain corporations from making that showing. *Id.* The Court determined that the statute as amended offended the equal protection clause. *Id.* at 521–25. Determining whether to sever the amendment, the Court reasoned:

> Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the legislature which enacted it. Without an express repeal, a different legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent.

*Frost*, 278 U.S. at 526–27. The Court concluded that a corporation that had obtained a license under the amended statute's exemption was "without authority to do business" unless it obtained a permit by a showing of public necessity. *Id.* at 528.

The *Frost* framework is applicable here. The 2015 amendment of the statute introduced the constitutionally offensive government-debt exception; as determined by the Supreme Court, the statute was sound before Congress introduced the errant exception. *See id.* at 2355 ("A generally applicable robocall restriction would be permissible under the First Amendment."). Under the reasoning adopted in *AAPC*'s

severability analysis, the 2015 amendment was void *ab initio*, and the pre-amendment statute should be treated as the valid expression of legislative intent. *AAPC*, 140 S. Ct. at 2353 (citing *Frost*, *Truax v. Corrigan*, 257 U.S. 312 (1921), *Eberle v. Michigan*, 232 U.S. 700 (1914), and *United States v. Jackson*, 390 U.S. 570 (1968)).

As Judge Anderson highlighted, such a framework would comport with the Ninth Circuit's binding decision in *Duguid*. *Shen*, 2020 U.S. Dist. LEXIS 237582, at *10–11. There, the plaintiff brought an ATDS claim on behalf of a putative class that received text messages from a social media company between 2012 and 2016. *See Duguid*, 926 F.3d at 1150. The Ninth Circuit, examining the constitutionality of the government-debt exception, severed the exception from the statute and remanded the case for further proceedings. *Id.* at 1157. Implicit in the unqualified order of remand is an acknowledgment that claims concerning non-government-debt collection robocalls straddling the 2015 amendment remain viable.

Defendant urges the Court to reject this framework. (Reply 3–6, ECF No. 64.) The controlling plurality in *AAPC* treated *Frost*'s reasoning favorably in the specific context of this statute. *See AAPC*, 140 S. Ct. at 2353. That the plurality adopted the reasoning in the context of a severance analysis, or that the case did not arise under First Amendment jurisprudence, does not detract from this favorable treatment.

Defendant argues that adopting the *Frost* framework would create *ex post facto* liability and due process issues for government-debt collectors. (Reply 4–5.) If Congress's 2015 amendment was a nullity, there is no *ex post facto* issue because there was no effective law. *See* U.S. Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be *passed*." (emphasis added)). Defendant cites no authorities supporting its underdeveloped due process argument. (*See* Reply 4–5.) The Court acknowledges that the *Frost* framework possibly could present due process implications for government-debt collectors. *See Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18 (acknowledging due process concerns). Regardless, this Court need not—and does not—decide on this motion whether government-debt collectors are subject to liability

for calls made between 2015 and 2020. Defendant is not a government-debt collector. The due process question properly should be resolved in a different case.

Defendant does not present any authority deeming a statute ineffective, in whole or in part, where the statute suffered a finite period of constitutional infirmity bookended by periods of validity. Instead, in its briefing and at oral argument, Defendant highlighted *Grayned v. City of Rockford*, 408 U.S. 104, 107 & n.2 (1972), in which the Supreme Court reversed a conviction based on an invalid ordinance the state legislature amended after the conviction. (Mot. 8; Reply 5.) But there was no period before amendment where the ordinance was valid; the reasoning espoused in *Frost* and approved in *AAPC* could not have been applied to the ordinance in *Grayned*.[3] Defendant cites *Grayned* for the proposition that "courts 'must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted.'" (Reply 5 (alteration in original) (quoting *Grayned*, 408 U.S. at 107 n.2).) Defendant misleadingly advances a general rule where the quoted language is specific to the case at bar: the *Grayned* court considered the validity of a conviction under the pre-amendment ordinance, so the Court "[n]ecessarily" had to examine the facial constitutionality of the pre-amendment ordinance under which the person was convicted. *Grayned*, 408 U.S. at 107 & n.2.

The Court respectfully declines to follow the reasoning of *Creasy*, *Lindenbaum*, and *Hussain*. The *Creasy* and *Hussain* courts did not discuss the *Frost* framework. The *Lindenbaum* court rejected the theory, relying on the *AAPC* plurality's suggestion that government-debt collectors should be shielded from liability during the period the statute was unconstitutional. *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *17–18.

---

[3] Defendant's analogy to *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), (Mot. 14–16), is unpersuasive for similar reasons. There, the Consumer Financial Protection Bureau's constitutionally infirm leadership structure was in place from the inception of the bureau. *Seila Law*, 140 S. Ct. at 2193 (discussing structure of bureau at its creation).

8

As Defendant and the *Lindenbaum* court acknowledge, however, the footnote is *dictum*. (Mot. 11.) *See Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *17. Although the plurality indicates that "no one *should* be penalized or held liable" for making government-debt robocalls, it does not hold, and has no reason to hold, that no government-debt collector *can* be penalized or held liable. 140 S. Ct. at 2355 n.12 (emphasis added). Nor does the plurality explain whether the contemplated liability shield arises from the enforceability of the statute as amended between 2015 and 2020, the unenforceability of the statute between 2015 and 2020, or due process considerations left undiscussed. In short, the footnote does not provide clear or binding guidance on the issue, and the Court need not decide the liability of government-debt collectors in this case.

The *AAPC* plurality's reasoning and the Ninth Circuit's binding decision in *Duguid* both indicate that the robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and 2020. Thus, the Court can adjudicate Plaintiff's individual claim concerning Defendant's non-government-debt collection messages sent in 2019.

## IV. CONCLUSION

The motion is denied.

**IT IS SO ORDERED.**

Dated: December 21, 2020

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE